## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Civil Action No.: 4:12-cr-00969-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Webster Douglas Williams III, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court following a hearing held on January 28, 2014, and a supplemental hearing on February 19, 2014, regarding Defendant Webster Douglas Williams III's ("Williams" or "Defendant") motion to suppress. Williams moves to suppress and exclude all evidence, physical and testimonial, obtained as a result of a search of Williams's home pursuant to a search warrant executed on November 12, 2011, and a subsequent search of electronic storage devices recovered during the initial search pursuant to a search warrant executed on November 18, 2011. The Court took the motion under advisement and, after considering the parties' arguments and the testimony of the witnesses, **DENIES** Williams's motion.

### PROCEDURAL HISTORY

Defendant is charged with two counts of 18 U.S.C. § 2251(a) and (e) (sexual exploitation of children); one count of 18 U.S.C. § 2423(b) (transporting a minor for sex); and one count of 18 U.S.C. § 2252A(a)(5)(B) (child pornography). In this motion, Defendant seeks to suppress and exclude evidence obtained in two separate searches conducted on November 12, 2011 and November 18, 2011.

## FACTUAL BACKGROUND

I.     **Victim Interview**

On the morning of November 12, 2011, Detective Neil Frebowitz ("Det. Frebowitz") received a phone call from a deputy coroner requesting his assistance in investigating a child abuse case.   The deputy coroner was somehow connected to the victim's family, and she requested through Det. Frebowitz's supervisor that he be assigned the case.   Det. Frebowitz was subsequently assigned the case, and later that morning he accessed a police report that a uniformed patrol officer had filed the day before.   This report contained a statement from the victim.   This statement was made by the Defendant's granddaughter, and alleged that he had been molesting and sexually assaulting her in his home since she was approximately six or seven years old.   It also claimed that Williams filmed himself engaging in various sexual acts with her.   She stated that this activity had happened most recently on November 4 and 5, 2011.

Det. Frebowitz was aware of the location where the purported abuse happened, and he drove by there to view the premises prior to interviewing the victim.   He stated that he wanted to get a quick view of the premises from the road for officer safety purposes.   Det. Frebowitz then conducted two separate interviews of the victim around midday on November 12, 2011.   He testified that the first interview was recorded, and noted that he was not attempting to ask specific questions with regard to the sexual nature of the crime at that time, as that is not the department's practice.   Instead, this interview was designed primarily to confirm what was written in the victim's statement and the accuracy of the police report.   Det. Frebowitz testified the victim stated that Williams had her watch videos of children her age "doing it," and that he would take pictures and/or videos of her while he molested her.   He said that she also described the camera Williams used to film the videos in this

2

interview, and stated that it was a newer camera and appeared to be a digital camera. In particular, she specified that the camera was a small handheld and that the screen flipped out.

After the conclusion of this interview, as Det. Frebowitz was about to leave, he asked the victim if there was anything in particular he should be looking for. The victim then described a sex toy, which she said Williams penetrated her with vaginally, and chocolate syrup which she stated that he would put on her genitals and breasts and lick off.

## II.    The November 12, 2011 Warrant

Once Det. Frebowitz finished interviewing the victim, he arranged to meet with a Magistrate Judge, and began preparing an affidavit for a search warrant. He testified that he had been involved in obtaining search warrants for residences concerning child pornography before, and prepared this warrant consistent with those. He stated that he was previously an officer in the District of Columbia, which is a federal system, and that the procedure there is much different than in South Carolina. In the District of Columbia, he noted that affidavits were generally quite lengthy and a lot more detailed than the typical South Carolina state affidavit. He testified that in South Carolina, warrants are much shorter and the standard procedure is to draft the warrant to fit a standardized form. Then, once the officer goes to obtain the warrant, he will supplement the affidavit with oral testimony before the magistrate to fully detail the facts supporting probable cause. Det. Frebowitz noted there is a template for drafting a warrant affidavit in South Carolina that his department uses, and that this document limits the amount of space in which written information can be typed. He testified that it is the department's policy to keep the written information limited to the length allowed for by the template rather than attaching an exhibit or supplement, then orally augmenting the affidavit via testimony to the magistrate. He noted that when he first began working in South Carolina he initially

drafted a warrant affidavit as he had previously done in Washington, D.C., but was specifically told by Magistrate Judge Phipps to discontinue that method and to follow the procedure he used in this case.

After preparing the affidavit, Det. Frebowitz went to Magistrate Judge Aaron Butler. The affidavit itself simply states that a victim reported that on November 4th and 5th, 2011 she had been assaulted, at the premises to be searched, by her grandfather. It stated that she identified the occupant and reported in great specificity the abuse she suffered and where she suffered it. Finally, the affidavit notes that the victim clearly described the suspect holding a video recording device and photographing the assault, as well as previously directing her to watch pornography.

In addition to the testimony in the affidavit, Det. Frebowitz testified to this Court that he supplemented his affidavit with testimony under oath before Magistrate Judge Butler. He testified to the Magistrate that the victim described in great detail how she was videotaped in a sexual scenario with what was more than likely a digital camera. Based on the victim's description, Frebowitz knew it was probably not a bulky VHS camera that they would be searching for in the home. Moreover, he told the Magistrate Judge that the victim indicated she was made to watch children of her own age "doing it," which he believed to mean having sex. He informed the Magistrate Judge that the victim claimed the abuse had occurred as recently as the previous weekend.

Det. Frebowitz then noted that it was not uncommon, in his experience, that when he deals with these sorts of alleged behaviors, the suspects often retain copies of the pornography. Therefore, he testified, the police would need to be able to search for volumes of child pornography. He noted that this information could be stored on any number of media including DVDs, hard drives, cassette discs, or beta max. Moreover, it could be in the form of printed pictures or contained in journals or

other writings.   He explained to the magistrate that he had seen all of these things before.   He noted

to the Magistrate Judge that the victim had only stated that she was made to watch "videos."

Therefore, the videos could be stored in any number of formats including DVD or VHS tape, or

digitally stored on a flash drive, thumb drive, hard drive, etc.   Det. Frebowitz also told the Magistrate

that it is not uncommon for digital images to be printed, and that these items would be kept in catalogs

or journals.   He then noted that people who engage in this kind of behavior routinely keep journals,

ledgers, trophies, memorabilia, and other documents.   Moreover, identification documents were

requested because these could potentially assist investigators in identifying other potential victims, as

in Det. Frebowitz's training there is rarely a singular victim or singular act.   Finally, Det. Frebowitz

testified to Judge Butler that the victim had described a sexual assault in a specific bedroom at a

specific time.   Thus, he explained that the police would need to look for physical evidence of the

assault including semen, biological fluids, and other biological evidence.

     Based on this information, Judge Butler found probable cause present and authorized a

warrant to search the premises.   The warrant authorized a search of the premises and search and

seizure of "[a]ny and all documents" including, but not limited to: "photo's, hair, fiber, writings,

notes, papers, identification, cameras, video's, computers, hard drives, media storage devices,

DVD's, CD's, semen, fluids, DNA, or biological fluids."

### III.    The Initial Search

     Williams was out of town when the warrant was executed.   Det. Frebowitz executed the

warrant along with a crime scene unit and a supervisor.   The crime scene lieutenant processed the

scene and conducted the search.   The police found a camera box which had a picture on the cover of

a camera consistent with the one that the victim described.   They also found a computer tower with

several hard drives, multiple cd cases and spindles containing numerous cds, massage oil, a vibrator, pillowcases with stains, swabs, and various other items detailed in the evidence log. During the search the police examined one CD and found images of young children being sexually exploited.

## IV.    The November 18, 2011 Warrant and Search

Based on the results of the November 12, 2011 search, Det. Frebowitz applied for and obtained a subsequent warrant on November 18, 2011. This warrant sought a search of the contents of computer systems, storage disks, and media obtained in the first search, all of which had already been taken into custody after the initial search. In particular, it sought to search four different hard drives for saved, archived, or deleted data including "video, email, ledgers, lists, records, documents, or photographs" contained in the media described. Defendant seeks to exclude evidence obtained as a result of this search as well.

DISCUSSION

Williams seeks to exclude the evidence obtained as a result of both these searches. First, he asserts that the November 12, 2011 affidavit fails the specificity requirement of the Fourth Amendment and is unconstitutionally overbroad. In particular, he asserts that the warrant fails to describe the items to be seized with sufficient particularity, and contains no objective standards for officers. Moreover, he asserts that the warrant is overbroad because it sought items as to which there was no independent probable cause. Defendant then argues that the good faith exception does not apply in this case because the affidavit was so lacking in indicia of probable cause that any belief in its existence was unreasonable. Finally, he asserts that the results of the November 18, 2011 search should be excluded as fruit of the poisonous tree.

## I.    Relevant Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a particular description of the place to be searched, and the person or things to be seized, and (3) be based upon probable cause, supported by Oath or affirmation."  *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994).   The Fourth Amendment does not limit the basis for probable cause for search warrants to written affidavits.   Rather, the Fourth Amendment "merely requires that the information provided the issuing magistrate be supported by Oath or affirmation." *Id.*  Furthermore, "the Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit."   *Id.* Thus, "sworn, unrecorded oral testimony" may be considered by magistrates in determining whether probable cause exists during warrant proceedings.   *Id.*

"In making a probable cause determination, a magistrate must use a totality of the circumstances analysis that considers the informant's reliability and the basis of the informant's knowledge."   *Id.* (internal quotation marks and citations omitted).   Thus, in reviewing the warrant application, the magistrate must "simply [ ] make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."   *Illinois v. Gates*, 462 U.S. 213, 214 (1983).   The primary consideration in determining whether probable cause exists is "whether it is reasonable to believe that the items seized will be found in the place to be searched."   *United States v. Lalor*, 996 F.2d 1578, 1582 (4th

Cir.1993). Reviewing courts give wide deference to probable cause determinations made by magistrates.  *Clyburn*, 24 F.3d at 617.

## II.    Defendant's Challenge of *Clyburn*

### 1.  Constitutional Challenge of *Clyburn*

In his supplemental memorandum in support of his motion to suppress, Defendant appears to argue that the Fourth Circuit's *Clyburn* decision is not a proper interpretation of the requirements of the Fourth Amendment.   He asserts that the Fourth Circuit's rule is in conflict with other circuits, and that the "appropriate standard requires that Courts address the sufficiency of an affidavit supporting a search warrant remain limited to review of the statements contained in the affidavit."   Def.'s Supp. Mem., ECF No. 96 at 1–2 (citing *Millinder v. Cnty. of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010), *rev'd Messerschmidt v. Millender*, __ U.S. __, 132 S. Ct. 1235 (2012); *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005); *United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005); *United States v. Murray*, 696 F. Supp. 2d 1044 (D. Ariz. 2010)).   In support of this position, Defendant cites language from a Supreme Court case which stated that the magistrate should make a probable cause determination "given all the circumstances set forth in the affidavit before him."  *Id.* at 2 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Court does not fault Williams for arguing that the Fourth Circuit has not applied the correct analysis required by the Fourth Amendment, as a non-frivolous argument for a change in law is certainly an appropriate argument to this Court.   The Court, however, must follow the established precedent of this Circuit.  *See, e.g.*, *Graham v. Office Depot, Inc.*, No. 4:04-23361-TLW-TER, 2007 WL 2891478, at *2 (D.S.C. Sept. 28, 2007) ("[T]his Court is required to follow and is constrained by the precedent of this Circuit in place at this time."); *Owens v. Padula*, No. 8:06-3014-GRA-BHH,

8

2007 WL 2116440, at *1 (D.S.C. July 19, 2007) ("[T]his Court is bound to apply Fourth Circuit precedent."). *Clyburn* sets for the applicable rules in the Fourth Circuit regarding what information a magistrate may consider in determining whether probable cause exists to support issuance of a warrant. The Court notes that the Fourth Circuit reached this decision over ten years after the *Gates* decision cited by Defendant. Moreover, this case has not been overruled by the Supreme Court or subsequent Fourth Circuit precedent, and its principles have been applied many times by the district courts within this circuit. Therefore, it remains the law of this circuit and the Court will apply it accordingly.

### 2. Challenge as to the Applicability of *Clyburn* in this Case

At the supplemental hearing, Defendant also argued that Clyburn should not apply in this situation because the search was conducted under the color of federal law. This theory is based on Det. Frebowitz's testimony at the supplemental hearing in which he admitted that he spoke with an FBI agent prior to completing the November 12, 2011 warrant. Det. Frebowitz testified, however, that the agent did not give any indication that the FBI was going to take over the case or that the police were searching the home because the FBI was interested in the case.

Defendant claims that this means that the search was conducted under the color of federal law, and therefore the requirements of Rule 41 of the Federal Rules of Criminal Procedure apply. Rule 41 provides more stringent requirements for supporting a federal warrant, requiring that "all information demonstrating probable cause be included in a written affidavit . . . or in sworn and recorded oral testimony." *Clyburn*, 24 F. 3d at 616. As the Fourth Circuit has explained though, "by its own terms, Rule 41 applies only to federal search warrants involving 'a federal law enforcement officer.'" *Id.* (quoting Fed. R. Crim. P. 41(a)). In other words, a warrant proceeding must meet Rule 41's

requirements "only where 'the warrant application was made at the direction or urging of a federal officer.'" *Id.* (quoting *United States v. Williams*, 977 F.2d 866, 870 (4th Cir. 1992). In a recent case the court clarified that "the triggering condition for application of Rule 41 is not a finding that the *investigation* was federal in nature but a determination that the [warrant] *proceeding* was a federal proceeding." *United States v. Claridy*, 601 F.3d 276, 281 (4th Cir. 2010). The *Claridy* court continued, explaining that "an application for a search warrant cannot categorically be deemed a 'proceeding' governed by the Federal Rules of Criminal Procedure, based simply on the role that federal law-enforcement officers played in the investigation." *Id.* at 282.

Williams cited two cases in the supplementary hearing which he argues are analogous to the present matter, and asserts that these cases establish that the November 12, 2011 search "involved a federal law enforcement officer" thus triggering Rule 41. In the first case, *Byars v. United States*, the Court found that the federal agent "was asked to participate and did participate as a federal enforcement officer" and "that the search in substance and effect was a joint operation of the local and federal officers." 273 U.S. 28, 33 (1927). The state officers specifically requested the presence of a federal agent and he actually participated in the search itself. *See id.* The second case, *Lustig v. United States*, consisted of a situation where:

> The uncontroverted facts show that before the search was concluded Greene was called in, and although he himself did not help to empty the physical containers of the seized articles he did *share in the critical examination* of the uncovered articles *as the physical search proceeded.*

338 U.S. 74, 78 (1949) (emphasis added). The federal agent in *Lustig* participated in the investigation of the suspect prior to the state police obtaining the warrant in question in that case. *See id.* at 77. Moreover, after the state officers executed the warrant at a hotel, the federal agent

10

"came to the hotel and examined the evidence in controversy."  *Id.*   The Supreme Court explained that "[t]he decisive factor in determining the applicability of the *Byars* case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means."  *Id.* at 79.

The Court notes first that the *Claridy* case, decided long after the cases cited by Defendant, establishes that the relevant inquiry regarding Rule 41's applicability concerns whether the *warrant proceeding* was federal in nature, not whether the investigation or execution of the warrant involved a federal officer.   Moreover, even despite *Claridy*, *Byars* and *Lustig* are distinguishable on their face because here the FBI agent was not physically present during the search, and did not examine evidence at the scene of the search.   The Court finds that *Byars* and *Lustig* contemplate actual, direct involvement in accomplishing the illegal search by the federal agent.   This situation is easily distinguishable, as Det. Frebowitz merely had a conversation with a federal agent about the case he was investigating.   The FBI did not participate in any way in accomplishing the purported illegal search or examining the evidence seized during the search, much less the actual warrant proceeding. Therefore, the Court finds that the requirements of Rule 41 do not apply in this case, and it will apply the principles set forth in *Clyburn*.  *See United States v. Smith*, 914 F.2d 565, 569 (4th Cir. 1990) (finding that Rule 41's requirements did not apply where "there is no evidence that [the state police officer] applied for the warrant at the direction or urging of a federal officer").

## III.    Particularity Requirement

The Court will address Defendant's particularity argument next.   As Defendant correctly notes, the Fourth Amendment specifically states that warrants must particularly describe the place to be searched and the persons or things to be seized.  *See* U.S. Const. amend. IV.   The warrant is

sufficiently particular and not overbroad when the affidavit is considered in conjunction with the oral supplementation by Det. Frebowitz to the Magistrate Judge.  Defendant's primary basis for his lack of particularity argument attacks the sufficiency of the contents of the affidavit used to support finding probable cause in the November 12, 2011 warrant.  For example, Defendant contends that the only crime described in the affidavit was sexual assault of a minor,[1]  but notes the warrant sought various types of media storage devices without any allegation that they contained evidence relevant to the investigation.  Defendant argues the affidavit did not allege that Williams saved any files to media storage devices.  Moreover, he argues that the affidavit sought various papers despite no information in the affidavit suggesting that written information was being sought.

Williams analogizes his case to *United States v. Kow*, where the Ninth Circuit found a warrant overbroad that sought "virtually every document and computer file" at the premises without providing any guidance to the officers conducting the search or indicating how the documents in each category related to specific criminal activity.  *See* 58 F.3d 423, 427 (9th Cir. 1995).  Moreover, he cites to a Fourth Circuit case which noted that the "relevance of materials subject to seizure in a search warrant to an alleged crime stated in the supporting affidavit is the pivotal factor" in determining whether the Fourth Amendment was violated.  *See United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993) (per curiam).  He contends that the warrant should only have allowed seizure of items that related to the purported sexual assault.  In other words, hair, fiber, semen, and DNA or biological fluids.  Defendant asserts that the warrant was overbroad since the affidavit did not allege that the electronic storage media to be seized contained any evidence relevant to the

---

[1] The Court notes that, in addition to describing a sexual assault, the affidavit also states that "[t]he victim clearly described the suspect holding a video recording device and photographing the assault as well as previously directly [sic] the victim to watch pornography."

investigation.   Moreover, Defendant argues that the affidavit did not allege that he saved any files to media storage devices, further supporting the overbreadth argument.   Finally, Williams contends that to the extent a video camera was alleged to have been used in the assault, a description of the camera or "video recording device" described in the affidavit should have been provided.

Defendant's arguments, therefore, revolve around purported deficiencies with the contents of the affidavit itself.   Det. Frebowitz, however, testified before this Court that he gave extensive testimony to the Magistrate Judge which supplemented his affidavit.   As the Fourth Circuit stated in *Clyburn*, a magistrate can use unrecorded oral testimony in determining whether probable cause to issue a warrant exists.   The Court finds that Det. Frebowitz's testimony was credible.   In particular, the Court found Det. Frebowitz's testimony that he had 25 years of experience in the federal system, and that the procedure in the federal system is much different than what is used in the South Carolina state system, to be highly credible and persuasive.   As he explained, it is customary to do a form affidavit with relevant details, but to provide oral testimony to fill in any gaps as to the existence of probable cause.

Det. Frebowitz testified before this Court concerning how he provided extensive details to the Magistrate Judge about the type of camera that they were seeking, and explained to him that there were allegations of digitally stored video recordings and photographs depicting minors engaged in sexual activity.   Det. Frebowitz told Judge Butler that the victim alleged that she was shown videos of children her age "doing it."   Det. Frebowitz testified to the Magistrate that, in his experience, individuals who engage in this sort of behavior typically store pornography in many different formats. He also explained to Judge Butler that they may even keep journals or other documents, and that these may be useful for identifying victims.   Det. Frebowitz also informed the Magistrate Judge that the

victim gave a detailed description of the camera, indicating it was small with a screen that flipped out. Thus, he understood it to be a newer digital video camera rather than a VHS camera. Finally, the language of the affidavit itself detailed the sexual assault allegation, and the supplementary testimony described how the victim described the particular room where she was assaulted.

The Court finds that the November 12, 2011 warrant was sufficiently particular based on the totality of the circumstances. Considering the language of the affidavit itself, as well as Det. Frebowitz's credible testimony regarding the supplementary information he told the Magistrate, the Court finds that the warrant met the particularity requirement. Each of the categories of materials subject to seizure was relevant to the alleged crimes either described in the affidavit itself or the supplementary testimony given to the Magistrate as contemplated by *Clyburn*, meaning the *Oloyede* standard of relevance was met in this case. *See Oloyede*, 982 F.2d at 141. All of the digital media, storage devices, writings, photos, and so forth directly related to the victim's allegations that Williams showed her child pornography and that he recorded himself sexually assaulting her with a specific style of camera.

## IV.    Overbreadth

Defendant's next argument is that there was no independent probable cause to search for evidence of child pornography. Here Williams attacks the language of the four corners of the affidavit a second time, asserting that it only claims that he showed the victim pornography, not that the victim was shown pornography meeting the statutory definition of "child pornography" in South Carolina. Again, this issue was also rectified by Det. Frebowitz's supplementary testimony to the Magistrate. He testified that he specifically informed the Magistrate that the victim told him she was forced to watch videos of kids her age, which was twelve at the time, "doing it." Moreover, he

14

testified the victim stated that she was filmed being molested and assaulted by the Defendant.   This

material would meet the statutory definition of "child pornography," which the South Carolina code

defines as "material that contains a visual representation of a minor engaging in sexual activity."   *See*

S.C. Code Ann. § 16-15-410.

The *United States v. Doyle* and *United States v. Adkins* cases cited by Defendant are

distinguishable from the present matter.   In *Doyle*, the Fourth Circuit found that an affidavit merely

alleging that a victim of sexual assault was shown pictures of nude children did not give rise to

probable cause to search for child pornography.   650 F.3d 460, 473 (4th Cir. 2011).   The Court

reached this result because it determined that photographs of nude children did not necessarily meet

the statutory definition of child pornography in Virginia, which required a "lewd exhibition" of

nudity.   *Id.*   Moreover, in *Adkins* the court held that "a high incidence of child molestation by

persons convicted of child pornography crimes may not demonstrate that a child molester is likely to

possess child pornography."   169 Fed. App'x 961, 967 (6th Cir. 2006).

In the case at bar, the affidavit and supplemental testimony clearly establish that the victim

was alleged to possess material containing "a visual representation of a minor engaging in sexual

activity."   The affidavit and testimony of Det. Frebowitz to the Magistrate Judge described much

more than mere possession of pictures of nude children.   In fact, both the affidavit and Det.

Frebowitz's supplemental testimony clearly established that visual representations were purportedly

made of the victim herself engaging in sexual activity.   This matter is also very different from

*Adkins*, as the police did not try to seek authorization to search for child pornography solely based on

the officer's experience that child molesters often possess child pornography.   In this case, there was

a specific allegation that Williams possessed child pornography.   The supplementary testimony of

15

Det. Frebowitz sufficiently established that there was probable cause to seize Defendant's electronic storage media and search it for evidence of child pornography.

## V.    Good Faith Exception

Defendant also argues that the good faith exception should not apply in this situation. Having found the warrant supported by probable cause, the Court need not reach the issue of whether the good faith exception applies.   However, the Court notes that even if the warrant was somehow defective, the good faith exception would in fact apply here.

The exclusionary rule is designed "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974).   "[T]he deterrence purpose of the exclusionary rule[, however,] is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate."   *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).   Nevertheless, there are four circumstances in which this exception does not apply:

> 1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> (2) if the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979);
>
> (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) if under the circumstances of the case the warrant is so facially deficient— i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

16

*Doyle*, 650 F.3d at 648 (quoting *United States v. DeQuasie*, 373 F.3d 509, 519–20 (4th Cir. 2004)) (internal quotation marks removed).

Again, Defendant cites to *Doyle*, noting that in *Doyle*, the Fourth Circuit found that probable cause did not exist and that the good faith exception was inapplicable because a reasonable officer should have known that the information in the search warrant was insufficient to rise to the level of probable cause. *Id.* at 473.  As previously noted, *Doyle* concerned a situation where the "bulk of the affidavit concerned allegations of sexual assault" and contained "remarkably scant evidence . . . to support a belief that Doyle in fact possessed child pornography." *Id.* at 472.  The only mention of child pornography was a statement by an alleged victim that the defendant showed them pictures of nude children. *Id.*  The court found that this did not necessarily meet Virginia's statutory definition for child pornography, and that nothing in the affidavit supported a belief that child pornography would be found in Doyle's home. *Id.*  Thus, probable cause did not exist. *Id.* at 473.  The court also found that the good faith exception did not apply because "[a] mere description that the photographs contained 'nude children' was insufficient to justify reasonable reliance on the warrant that authorized a search for child pornography." *Id.*

Defendant argues that, like in *Doyle*, a reasonable officer executing the warrant should have known there was no relevant connection between the broad categories of documents listed in the Warrant and the sexual assault.  As previously noted, however, the additional testimony that Det. Frebowitz gave to the magistrate supplementing his affidavit clearly established that sexual assault was not the only alleged criminal activity.  He specifically detailed how, in his experience, each category of items sought related to the purported crimes of both sexual assault, production of child pornography, and possession of child pornography.  Accordingly, the Court finds that a reasonable

17

officer would have believed that the warrant was sufficiently supported by probable cause.   Thus, even if the warrant was deficient, the good faith exception would apply here.

## VI.     Fruit of the Poisonous Tree

Defendant's last argument is that the results of the analysis of the electronic devices searched as a result of the November 18, 2011 warrant should be excluded because they are "fruit of the poisonous tree."   Defendant argues these items were fruit of the poisonous tree because the November 12, 2011 search warrant was unconstitutionally overbroad and did not contain sufficient independent probable cause. Accordingly, he asserts that the evidence obtained as a result of a subsequent search of the items seized in the November 12, 2011 search must be excluded.

"Suppression of evidence obtained during illegal police conduct provides the usual remedy for Fourth Amendment violations." *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007).   "Courts will also suppress evidence that is the indirect product of the illegal police activity as 'fruit of the poisonous tree.'"   *Id.*   The Court has previously determined that the November 12, 2011 search warrant was not deficient and was supported by probable cause.   Moreover, the Court determined that even if it was not, the good faith exception would apply.   Accordingly, since there was no Fourth Amendment violation, the fruit of the poisonous tree doctrine is inapplicable in this case.

<u>**CONCLUSION**</u>

For the foregoing reasons, Williams's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

 s/ R. Bryan Harwell      
R. Bryan Harwell
United States District Judge

March 12, 2014
Florence, South Carolina

19