UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Webster Douglas Williams, III, | ) | Criminal No.: 4:12-cr-00969-RBH-1 |
| | ) | Civil Action No.: 4:15-cv-04849-RBH |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court is Petitioner Webster Douglas Williams's ("Petitioner's") *pro se* [ECF #291] motion to vacate, set aside, or correct sentence ("motion to vacate") pursuant to 28 U.S.C. § 2255. Also pending is the Government's [ECF #341] motion for summary judgment.

**Procedural History and Factual Background**

Petitioner was indicted on December 18, 2012, in a four count indictment for child pornography related offenses. [ECF #2]. Count one alleged that on or about September 22, 2006, Petitioner knowingly induced or coerced a minor, "Jane Doe #1," to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251(a) and (e). Count two alleged that on or about September 4, 2011, Petitioner knowingly induced or coerced a minor, "Jane Doe #2," to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251(a) and (e). Count three alleged that from December 19, 2009, to December 23, 2009, Petitioner traveled in interstate commerce with a minor, "Jane Doe #1," for the purpose of engaging in a sexual act in violation of 18 U.S.C. § 2423(b). Count four alleged that on or about November 12, 2011, Petitioner knowingly possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Ultimately, Petitioner

pled guilty to counts one, three, and four in exchange for a stipulated sentencing range of 262 to 327 months.

On June 24, 2013, Petitioner's defense counsel filed a motion to suppress all evidence obtained as a result of a search of Petitioner's home on November 12, 2011, including a subsequent search of electronic storage devices on November 18, 2011. On January 8, 2014, the Court conducted a hearing on the motion to suppress. On January 13, 2014, Petitioner's defense counsel filed a supplemental memorandum in support of the previously filed motion to suppress. After a second hearing on February 19, 2014, the Court denied Petitioner's motion to suppress in an Order dated March 12, 2014.

On June 16, 2014, Petitioner signed a plea agreement pursuant to Rule 11(c)(1)(C), which provided that Petitioner would plead guilty to counts one, three, and four in exchange for a stipulated sentencing range of 262 to 327 months imprisonment. The plea agreement also provided that Petitioner agreed to pay restitution in an amount to be determined by the Court at sentencing. Petitioner further agreed in the plea agreement to pay Jane Doe #1 restitution in the amount of $136,600.00 plus $550 per month during the time he is incarcerated with said payments to begin one year from the day Petitioner was sentenced. The plea agreement contained a valid waiver of appeal provision waiving Petitioner's right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. The appeal waiver did not apply to claims of ineffective assistance of counsel or prosecutorial misconduct.

The Court conducted a change of plea hearing on June 16, 2014, and accepted Petitioner's guilty plea after conducting a complete Rule 11 plea colloquy. The Court deferred acceptance of the Rule 11(c)(1)(C) plea agreement until after the Court had the opportunity to review the presentence

investigation report prepared by the U.S. Probation Office. Upon motion of the government, the Court sealed the portion of the change of plea hearing that involved the minor victim.

A presentence investigation report ("PSR") dated August 14, 2014, and revised on September 16, 2014, was prepared by the U.S. Probation Office. With regard to sentencing options, the PSR stated that Petitioner's maximum possible statutory sentence was a total of 840 months or 70 years (30 year maximum for count one + 30 maximum for count three + 10 year maximum for count four). Petitioner's advisory guideline range was 360 months to life imprisonment. As to restitution to the victim of counts one and three, the PSR stated that the Petitioner agreed to pay restitution to Jane Doe #1 in the amount of $136,600 plus $550 per month during the time Petitioner is incarcerated with the payments to begin one year after sentencing. Accordingly, the PSR indicated that restitution to Jane Doe #1 would be calculated as follows: (number of months received at sentencing - 12 months x $550.00 per month + $136,600.00). With respect to restitution to the victims of count four (possession of child pornography count), the PSR indicated that the victims requested restitution in the amount of $177,500.00.

On December 19, 2014, Petitioner was sentenced to 327 months imprisonment pursuant to his Rule 11(c)(1)(C) plea agreement. Petitioner was also placed on supervised release for life upon his release from prison and ordered to pay restitution to Jane Doe #1 in the amount of $309,850.00. Petitioner was also ordered to pay restitution to the victims of count four in the amount of $177,500.00. The total amount of restitution ordered was $487,350.00 to all of Petitioner's victims. Again, upon motion of the government, the Court sealed the portion of the sentencing hearing that involved the minor victim.

After sentencing on December 19, 2014, Petitioner filed a waiver of appeal indicating the following: 1) that he had been notified by the court of his right to appeal; 2) the time limit for filing

a notice of appeal; 3) that he had discussed his right to appeal with his attorney; and 4) that he did not want to appeal.

Judgment was filed on January 7, 2015, and an Amended Judgment reflecting priority of the victims for restitution was filed on February 10, 2015.

Petitioner filed his first motion to vacate under 28 U.S.C. § 2255 on December 7, 2015, raising, among other issues, a claim that his lawyers were ineffective for failing to file a direct appeal when requested. On July 12, 2016, the Court granted in part Petitioner's motion to vacate. Specifically, the motion to vacate was granted only as to ground four on the issue of counsel's alleged failure to file a direct appeal when instructed to do so. The Court vacated Petitioner's sentence and immediately re-imposed and reinstated the same conviction with the date of judgment being July 12, 2016. The remaining claims in Petitioner's motion to vacate were dismissed without prejudice.

On July 12, 2016, the Court appointed the Federal Public Defender's Office to represent Petitioner on his direct appeal. Petitioner, through counsel, filed a notice of appeal on July 13, 2016, appealing his criminal conviction and sentence.

On October 25, 2016, the government moved to dismiss Petitioner's direct appeal based on the appeal waiver contained in Petitioner's plea agreement.

On December 20, 2016, the Fourth Circuit Court of Appeals granted the government's motion to dismiss and dismissed Petitioner's direct appeal. The mandate and judgment were issued on January 11, 2017.

Petitioner filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 on February 6, 2017.

Petitioner has made numerous filings and asserts what appear to be 31 grounds for relief, many of which overlap or are duplicative to some extent and are addressed accordingly in this Order.

On June 22, 2017, the government filed a response and motion for summary judgment. Petitioner has made several filings in opposition to the government's motion to dismiss.

### Applicable Law

Prisoners in federal custody may attack the validity of their sentences pursuant to 28 U.S.C. § 2255. In order to move the court to vacate, set aside, or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) a sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Nonconstitutional claims may be brought pursuant to § 2255, but will not provide a basis for collateral attack unless the error involves a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct., 2235, 2240 (1979); *United States v. Morrow*, 914 F.2d 608, 613 (4th Cir. 1990).

A petitioner cannot ordinarily bring a collateral attack on the basis of issues litigated on direct appeal. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (stating petitioner "cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion'"); *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)*; Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.), cert denied, 429 U.S. 863, 97 S. Ct. 169 (1976). An exception occurs where there has been an intervening change in the law. *Davis v. United States*, 417

U.S. 333, 342, 94 S.Ct. 2298, 2302 (1974). Additionally, where a defendant could have raised a claim on direct appeal but fails to do so, the claim may only be raised in a federal habeas proceeding if the defendant can show both cause for and actual prejudice from the default, *see Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or that he is actually innocent, *see Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

In deciding a motion to vacate, the court may summarily dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rules Governing Section 2255 Proceedings 4(b); *see* 28 U.S.C. § 2255(b) (a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief). An evidentiary hearing "is required when a movant presents a colorable [ ] claim showing disputed material facts and a credibility determination is necessary to resolve the issue." *United States v. Coon*, 205 F. App'x 972, 973 (4th Cir. 2006) (citing *United States v. Witherspoon*, 231 F.3d 923, 925–27 (4th Cir. 2000)). However, a hearing is not required unless the claim shows "disputed facts involving inconsistencies beyond the record." *United States v. Robinson*, 238 F. App'x 954, 955 (4th Cir. 2007). Conclusory allegations contained within affidavits do not require a hearing. *Strong v. Johnson*, 495 F.3d 134, 139–40 (4th Cir. 2007). "Thus, no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statement of fact.' " *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

Petitioner's motion to vacate alleges, among other things, ineffective assistance of counsel. Claims of ineffective assistance of counsel are constitutional in nature and therefore are properly

asserted under § 2255. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Constitution. amend VI. The United States Supreme Court has interpreted the Sixth Amendment to require that counsel be effective. *Strickland v. Washington*, 466 U.S. 668, 686, (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). In order to prevail on an ineffective assistance claim, petitioner must satisfy the two-prong test of *Strickland* that (1) his "counsel's representation fell below an objective standard of reasonableness," *id*. at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. A court applying the *Strickland* test may apply either prong first and does not need to analyze both prongs of the test if petitioner makes "an insufficient showing on one." *Id.* at 697.

In examining the performance of counsel, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. at 689. A reviewing court must be highly deferential in scrutinizing counsel's performance and must filter from its analysis the "distorting effects of hindsight." *Id*.

Regarding "deficient performance," a court must defer to counsel's tactical decisions and give counsel the benefit of a strong presumption of reasonableness. *See id.* at 689. While an attorney has a duty to investigate reasonable claims and defenses, an attorney's performance cannot be deemed ineffective or deficient if he fails to raise a defense which is "very weak". *Smith v. State of South Carolina*, 882 F.2d 895, 898 (4th Cir. 1989); *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3rd Cir. 1996). A habeas petitioner alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

That the outcome may have been different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, a court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Id*. A defendant cannot show that a proceeding was fundamentally unfair if the underlying claims the attorney failed to raise are meritless, because the outcome of the proceeding would not have been different.

<u>Analysis</u>

<u>Grounds 1 and 23 - Counsel Animus Towards Petitioner</u>

In grounds one and twenty-three, Petitioner alleges he was denied effective assistance of counsel based trial counsels' animus towards him. Petitioner contends that "counsel so despised Movant for the offenses with which Movant was charged that he could not provide the loyalty and assistance demanded by the Sixth Amendment." [ECF No. 296 at 19]. Petitioner argues that his attorneys were working against him and he never stood a chance to have a fair hearing. *Id* at 51. Petitioner also states that a financial conflict arose between himself and Mr. Brittain over the alleged liquidation of Petitioner's share of a $24 million dollar estate. Petitioner states he believes his attorneys were so fixated on Petitioner's money that they were blinded to performing adequately. He does not indicate how this led to ineffectiveness, or inadequacy of representation, nor the purpose of the liquidation (e.g. to generate monies for restitution, fees, etc.). Moreover, Petitioner does not allege that he was not a willing participant in any such transactions.

Regardless, Petitioner's claims are in direct conflict with his sworn testimony during his guilty plea hearing. At the guilty plea hearing, Petitioner testified as follows:

> The Court:    Are you satisfied with the manner in which your
> attorneys have advised you and represented you?

8

| | |
|---|---|
| Petitioner: | Yes, sir. |
| The Court: | Have you talked with your attorneys for as often and for as long as you felt it was necessary for them to represent you? |
| Petitioner: | Yes, sir. |
| The Court: | Do you need any more time to talk to your attorney? |
| Petitioner: | No, sir. |
| The Court: | Have you understood your conversations with your attorneys? |
| Petitioner: | Yes, sir. |
| The Court: | Has your attorney done everything for you that you feel he should have done or could have done for you? |
| Petitioner: | Yes, sir. |
| The Court: | Has your attorney failed to do anything that you've asked them to do? |
| Petitioner: | No, sir. |
| The Court: | Is there anything else you wanted your attorneys to do prior to this hearing? |
| Petitioner: | No, sir. |
| The Court: | Are you completely satisfied with your attorney's services? |
| Petitioner: | Yes, sir. |
| The Court: | Do you have any complaint that you want to make to the Court about your attorney? |
| Petitioner: | No, sir. |

[Plea hearing tr., ECF NO. 159 at 30-35].

"[A] defendant's solemn declarations in open court affirming [a plea] agreement ... 'carry a strong presumption of verity." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir.2003). In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." *See Crawford v. United States*, 519 F.2d 347, 350 (4th Cir.1975) (holding that "the district court was not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by [the petitioner] when he pleaded guilty"), partially overruled on other grounds by *United States v. Whitley*, 759 F.2d 327 (4th Cir.1985) (en banc); *Lasiter v. Thomas*, 89 F.3d 699, 702-03 (10th Cir.1996) ("[The petitioner] [i]s bound by his solemn declarations in open court and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing. This case does not involve the most extraordinary circumstances.") (internal quotation marks omitted); *Ouellette v. United States*, 862 F.2d 371, 377-78 (1st Cir.1988) (holding that an evidentiary hearing is not required when a petitioner's uncorroborated allegations are directly contradicted by his testimony at the time of his plea colloquy); *see also Bowman*, 348 F.3d at 417 ("[W]hen a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process.").

"Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding

10

an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-222.

Petitioner's claims in grounds 1 and 23 directly contradict his sworn statements at the guilty plea hearing. Petitioner has failed to demonstrate sufficient "extraordinary circumstances" to overcome the strong presumption of truth carried by sworn statements made on the record in open court. Accordingly, Petitioner's claims in grounds 1 and 23 are frivolous, without merit, and due to be dismissed.

## Grounds 2, 20-22, and 30 - Restitution

In grounds 2, 20-22, and 30, Petitioner generally challenges the amount of restitution, the garnishment of his pension to pay the restitution, and the diversion of Petitioner's income tax refund under the Treasury Offset Program. Petitioner claims his lawyers were ineffective when they advised him to enter into a plea agreement that stipulated a restitution amount of $487,350.00. Petitioner argues that the restitution amount violates *Paroline v. United States*, 134 S. Ct. 1710 (2014), which held that a proximate cause requirement applied to awards of restitution and restitution for child pornography possession should be awarded in an amount comporting with defendant's relative role in the causal process underlying the victim's general losses.[1]

It should be noted that Petitioner's plea agreement provided for a stipulated sentencing range of 262 to 327 months imprisonment, which was far below the statutory maximum of 840 months imprisonment and well below the advisory sentencing guideline range of 360 months to Life in prison. Mr. Brittain and Mr. Simmons appropriately questioned whether the Court would accept the

---

[1] It would appear Pettitioner's *Paroline* argument is directed toward the victims of count 4; regardless, his claim fails.

sentencing range set forth in the plea agreement because it was substantially lower than Petitioner's advisory sentencing guideline range. Extraordinary restitution, however, is a valid basis for a downward departure from a defendant's advisory sentencing guideline range. *See United States v. Hairston*, 96 F.3d 102, 109 (4th Cir. 1996). Advising Petitioner to agree to a generous restitution amount, which he had the financial means to pay, in an effort to demonstrate extraordinary restitution and convince the Court to accept the stipulated sentencing range was a valid strategy that this Court will not second guess. Petitioner has failed to show that his attorneys were constitutionally deficient when they advised Petitioner to agree to a generous restitution amount that he had the means to pay.

Petitioner knowingly and voluntarily agreed to the restitution amount set forth in his plea agreement and withdrew his objections to the presentence investigation report. These were valid strategies calculated to convince the Court to accept the favorable sentencing range set forth in the plea agreement. The Court specifically questioned Petitioner regarding the restitution provision in his plea agreement during his guilty plea hearing. At sentencing, Petitioner, through counsel, arranged for the restitution amount to be deducted from his retirement and provided the relevant information to make that possible. Petitioner's arguments that the restitution order and garnishment of his pension violate either S.C. Code Ann. § 15-41-30 or 15 U.S.C. § 1673 fail because Petitioner knowingly and voluntarily agreed to both the restitution amount and the manner in which the restitution would be paid. Again, this was done in an effort to demonstrate extraordinary restitution at sentencing.

Additionally, on direct appeal, the Fourth Circuit Court of Appeals held that Petitioner's restitution order did not violate 15 U.S.C. § 1673(a) because the exception contained in 15 U.S.C. §

1673(b)(1)(A), (b)(2)(A), and (B) applied. Because Petitioner raised that issue on direct appeal, he cannot raise the issue again in a § 2255 motion to vacate. *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (stating petitioner "cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion'"); *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)*; Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.), cert denied, 429 U.S. 863, 97 S. Ct. 169 (1976).

Finally, Petitioner's claims regarding restitution, garnishment, and the diversion of his income tax refund are not cognizable on a motion to vacate sentence under 28 U.S.C. § 2255 because the claims do not relate to Petitioner's custody. *See United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (stating "complaints concerning restitution may not be addressed in § 2255 proceedings" and claims cognizable under § 2255 are limited to "claims relating to unlawful custody"); *United States v. Hudgins*, 201 Fed.Appx. 142, 2006 WL 2794412, at *1 (4th Cir. Sept. 25, 2006).

For those reasons, grounds 2, 20-22, and 30 are dismissed.

## Grounds 3-4, 10, 14-18, 24-27, and 31 - Search Warrant/Motion to Suppress

In grounds 3-4, 10, 14-18, 24-27, and 31, Petitioner claims ineffective assistance of counsel related to his attorneys' handling of the motion to suppress evidence discovered during the search of Petitioner's residence. Petitioner argues that law enforcement violated the "knock and announce" rule, unlawfully obtained his house key from a neighbor (Leroy Marcotte), refused to present a copy of the warrant to Marcotte on Marcotte's request, and "broke" into Petitioner's house during the execution of the search warrant. Petitioner further argues the search warrant lacked sufficient particularity as to the items to be seized, the search and seizure of items exceeded the scope of the

13

warrant, and the search warrant affidavit lacked specificity and was unconstitutionally overbroad. Petitioner also argues that defects in the chain of custody should have resulted in the evidence being suppressed, specifically that the evidence stayed in a police car over the weekend. Petitioner argues that his attorneys were ineffective in failing to raise these issues to the Court including failing to call Leroy Marcotte (keyholder neighbor) as a witness at the suppression hearing. Petitioner contends that if these issues were raised, the evidence seized at his residence would have been suppressed and he would not have pled guilty and would have proceeded to trial.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In the context of a guilty plea, Petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, trial counsel filed a motion to suppress supported by two well-written memoranda. *See* [ECF Nos. 53 & 96]. In the motion to suppress, trial counsel argued the search warrant failed the specificity requirement and was unconstitutionally overbroad. Trial counsel also argued the good faith exception did not apply because the search warrant affidavit was so lacking in indicia of probable cause that any belief in its existence was unreasonable. Trial counsel also argued that Rule 41 of the Federal Rules of Criminal Procedure was violated when any oral additions to the search warrant affidavit were not recorded or made part of the affidavit.

After a hearing on the motion to suppress on January 28, 2014, and a supplemental hearing on February 19, 2014, the Court denied Petitioner's motion to suppress. *See* [Order denying motion to suppress, ECF No. 111]. The Court held that the warrant was sufficiently particular and not overbroad when the affidavit was considered in conjunction with the oral supplementation by Detective Frebowitz to the Magistrate Judge. Having found the warrant supported by probable cause, the Court also noted that even if the warrant was defective, the good faith exception would apply in this case.

Petitioner's trial attorneys were not deficient in their handling of the motion to suppress. Trial counsel raised what they believed to be meritorious issues in the motion to suppress. The decision not to raise frivolous arguments was a reasonable strategy and does not amount to constitutionally deficient performance.

Petitioner has also failed to demonstrate prejudice because his underlying claims challenging the search and seizure lack merit. A violation of the knock and announce rule does not result in the suppression of evidence. *Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (holding a violation of the knock and announce rule does not require suppression of evidence found in the search). Similarly, law enforcement's alleged failure to present a copy of the warrant to Petitioner's keyholder Marcotte would not result in suppression of the evidence as neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 impose a requirement that the executing law enforcement officer present the property owner with a copy of the warrant before conducting the search. *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006). In the event the decision not to present the warrant to Petitioner's keyholder Marcotte on request goes to the overall reasonableness of the search under the Fourth Amendment, the search was reasonable, as was the decision not to present a copy of the

warrant to Marcotte given the sensitive nature of the charges, the minor victim, and Marcotte's lack of standing to assert Fourth Amendment rights on behalf of Petitioner. *See Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 443 (6th Cir. 2006) (stating "the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search"); *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (stating "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").  Lastly, with regard to Petitioner's claim that the chain of custody was not adequately maintained, a break in the chain of custody does not lead to exclusion of evidence as long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect. *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982) ("missing link" in chain of custody does not prevent the admission of evidence as long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect).

To the extent law enforcement engaged in misconduct with regard to the entry into Petitioner's residence, the remedy would be an action for damages for any actual damages sustained as a result of law enforcement's forced entry into Petitioner's residence, not suppression of the evidence. *Hudson*, 547 U.S. at 598-99.  Similarly, to the extent Mr. Marcotte, the keyholder neighbor, was injured during the course of his encounter with law enforcement, Mr. Marcotte may have an action for damages.  Petitioner, however, is not entitled to exclusion of the evidence seized and Petitioner's motion to suppress would have still been denied even if his lawyers had raised all of the issues suggested by Petitioner in his filings.

Petitioner's claim that his attorneys failed to raise certain legal arguments or call Marcotte as a witness during the suppression hearing is contradicted by Petitioner's sworn statement during his guilty plea, which indicated that he was satisfied with his attorneys and that they had done everything he had asked them to do.

Although it appears Petitioner seeks reconsideration of the Court's ruling on the motion to suppress, that claim is procedurally defaulted as that claim was not raised on direct appeal and Petitioner has failed to show cause and actual prejudice for the default. *see Murray*, 477 U.S. at 485. Further, Petitioner waived the right to seek collateral review of his conviction or sentence in his plea agreement.

Petitioner also appears to claim *ineffective assistance of appellate counsel* for failing to appeal the denial of the motion to suppress.   In applying *Strickland* to claims of ineffective assistance of counsel on appeal, reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir.1989).  Indeed, " '[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones*, 463 U.S. at 751, 103 S.Ct. 3308); *see also Smith*, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed

"to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Appellate counsel's decision to focus on the appeal waiver, sentence, and restitution order rather than the properly denied motion to suppress was reasonable. Accordingly, Petitioner cannot show that his appellate counsel was deficient for failing to challenge the denial of the motion to suppress on direct appeal.

Having failed to show either constitutionally deficient performance or resulting prejudice, Petitioner's grounds 3-4, 10, 14-18, 24-27, and 31 are dismissed.

## Ground 5 - FBI Interview

In ground 5, Petitioner alleges ineffective assistance of counsel based on the allegation that his attorneys "abandoned" him during his interview with the FBI. However, Petitioner has failed to demonstrate that his attorneys' decision not to accompany him during his FBI interview fell below an objective standard of reasonableness.

Petitioner does not allege that his will was overborne or his capacity for self-determination was impaired by the lack of attorney presence at the FBI interview. Petitioner knowingly and voluntarily gave a statement to the FBI in an effort to receive a lenient sentence. *See* [Motion to Vacate, ECF No. 296, at 23] ("it was my understanding that making this statement would shorten my sentence, that I would receive a lenient sentence in exchange for cooperating with the FBI"). The fact that Petitioner's attorneys may not have been present for the interview does not constitute ineffective assistance of counsel under *Strickland*, and the Court notes again that it accepted Petitioner's Rule 11(c)(1)(C) plea agreement, which was below the advisory guideline range.

Additionally, Petitioner's sworn statements on the record during his guilty plea hearing indicate that he was satisfied with his lawyers, had no complaints, and they had done everything he asked them to do.

Petitioner's ground 5 is dismissed.

**Ground 6 - Chocolate Syrup/Number of Images**

In ground 6, Petitioner argues that his attorneys were ineffective when they failed to strenuously object to both the case agents' reference to Petitioner pouring chocolate syrup over one of his victims and the number of child pornography images found in Petitioner's possession.

The reference to chocolate syrup was made during a hearing on Petitioner's motion for bond on May 20, 2013, during the direct examination of FBI Special Agent Jeff Long. *See* [ECF No. 52 at 18]. Special Agent Long testified that during the forensic interview, the child victim was asked if Petitioner ever used any types of lotions or creams when he was sexually assaulting her. *Id*. at 17. Special Agent Long testified that at one point during the interview, the child victim said that Petitioner poured chocolate syrup on her and her brother while the three of them were nude in the shower together. *Id*. at 18.

Relief under § 2255 only affords a federal prisoner relief if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A claim of ineffective assistance of counsel with respect to a bond hearing is not cognizable on a § 2255 motion to vacate because the claim does not attack Petitioner's conviction or sentence. *See, e.g. United States v. Daly*, Crim. No. 96-182, 1999 WL 138895 (E.D. La. Mar. 11, 1999); *Edwards v. United States*, 6:10-CV-1250-ORL-19, 2011 WL 1357687 (M.D.

19

Fla. April 11, 2011). Therefore, Petitioner's claim that his attorneys were ineffective for failing to object to the reference to chocolate syrup at his bond hearing is not cognizable on collateral review. To the extent the reference was made elsewhere in the record, Petitioner has failed to demonstrate how he was prejudiced by the statement.

As to the number of child pornographic images, the PSR attributed 1,010,275 child pornography images to Petitioner. In his opposition to the government's motion for summary judgment, Petitioner states that the true number is closer 40,000 images of child pornography. Pursuant to U.S.S.G. § 2G2.2(b)(7), if the offense involved 600 images or more, the defendant's offense level is increased by 5 levels. Whether the true number was 40,000 or 1,010,275, Petitioner still would have been subject to the 5 level increase in his offense level pursuant to U.S.S.G. § 2G2.2(b)(7). Again, Petitioner's advisory guideline range was 360 months to life imprisonment. Accordingly, Petitioner cannot demonstrate prejudice with respect to the number of child pornography images. Petitioner also cannot demonstrate prejudice as to the number of images because he was not sentenced pursuant to the sentencing guidelines, but was sentenced pursuant to a Rule 11(c)(1)(C) plea agreement. The number of child pornographic images possessed by Petitioner, whether 40,000 or 1,010,275, had no impact on Petitioner's conviction or sentence.

For those reasons, ground 6 is dismissed.

## Ground 7 - John Simmons

In ground 7, Petitioner claims he was denied effective assistance of counsel because his co-counsel, John Simmons, was not sufficiently qualified to handle Petitioner's case. Petitioner also appears to argue that Mr. Brittain was ineffective for advising Petitioner to hire or associate Mr. Simmons.

Ground 7 is wholly without merit. John Simmons is a former United States Attorney for the District of South Carolina, served as an Assistant United States Attorney, and has defended numerous criminal matters in federal court during nearly thirty years in private practice. *See* [Affidavits of John S. Simmons, ECF Nos. 225 & 307]. Mr. Simmons was eminently qualified to handle Petitioner's case.

Mr. Simmons provided effective and competent representation to the Petitioner. The record and available transcripts indicate that Mr. Simmons advocated strenuously on behalf of the Petitioner at all stages of the case including Petitioner's bond hearing, suppression hearing, and sentencing. Mr. Simmons, together with Mr. Brittain, obtained a very favorable Rule 11(c)(1)(C) plea agreement for Petitioner that stipulated to a sentencing range significantly below Petitioner's advisory guideline range and the statutory maximum sentence.

Petitioner's claim that Mr. Simmons was not qualified to represent him on his charges is without merit. Petitioner's claim that Mr. Brittain was ineffective for associating Mr. Simmons is also frivolous and without merit.

Ground 7 is dismissed.

## Ground 8 - Guilty Plea

Petitioner claims in ground 8 that his guilty plea was coerced by his own attorneys. This claim is belied by Petitioner's sworn statements at the guilty plea hearing, which indicate that Petitioner knowingly and voluntarily pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement.

The following exchange is relevant to Petitioner's claim that his attorneys coerced his guilty plea:

The Court:    Mr. Williams, anybody forcing you to plead guilty?

Petitioner:   No, sir.

The Court:    Are you doing so freely and voluntarily?

Petitioner:   Yes, sir.

The Court:    Has anybody threatened you or pressured you to plead guilty?

Petitioner:   No, sir.

The Court:    Other than a plea agreement, if there is one, has anybody promised you anything?

Petitioner:   No, sir.

. . .

The Court:    Mr. Williams, you have signed this written plea agreement; is that correct?

Petitioner:   Yes, sir.

The Court:    And you have initialed the changes; is that correct?

Petitioner:   Yes, sir. Your Honor.

The Court:    Have you entered into this entire plea agreement freely and voluntarily?

Petitioner:   Yes, sir.

The Court:    Have you reviewed it with your attorneys?

Petitioner:   Yes, sir.

The Court:    Do you understand it?

Petitioner:       Yes, sir.

The Court:       Does it set out your entire agreement with the
United States concerning all of these charges against you?

Petitioner:       Yes, sir.

The Court:       And you've signed it and entered into it freely and
voluntarily; is that correct?

Petitioner:       Yes sir.

The Court:       And with regard to the restitution paragraph in
there, it looks like paragraph 2B, you've agreed to that as well as
the entire agreement freely and voluntarily: is that correct?

Petitioner:       Yes, sir.

The Court:       And you've discussed that with your attorneys,
correct?

Petitioner:       Yes, sir.

The Court:       And also with regard to the 11(c)(1)(C) stipulated
sentence set forth in paragraph 11 of your plea agreement, it
indicates that you're agreeing to a sentence of from 262 to 327
months actual incarceration followed by an appropriate statutory
term of supervised release.

        You've fully discussed that with your attorneys: is that
correct?

Petitioner:       Yes, sir.

The Court:     You've agreed to that freely and voluntarily; is that

correct?

Petitioner:    Yes, sir.

The Court:     And you've agreed to this entire agreement freely

and voluntarily; is that correct?

 Petitioner:    Yes, sir.

[Plea hearing tr., ECF No. 159 at 57-58, 77-79].

The Court conducted a proper Rule 11 colloquy and established that Petitioner's plea was

knowing and voluntary.  In the absence of extraordinary circumstances, allegations in a Section 2255

motion that directly contradict the petitioner's sworn statements made during a properly conducted

Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." *Crawford*, 519

F.2d at 350.  Petitioner has not shown sufficient extraordinary circumstances to overcome the hurdle

created by his sworn statements under oath.  In consideration of Petitioner's sworn testimony,

Petitioner cannot establish ineffective assistance of counsel with respect to his guilty plea.

Petitioner is also barred from challenging the voluntariness of his guilty plea in a Section

2255 motion to vacate because Petitioner failed to raise that claim on direct appeal. *See Bousley v.*

*United States*, 523 U.S. 614, 621 (1998) (stating "the voluntariness and intelligence of a guilty plea

can be attacked on collateral review only if first challenged on direct review").

For those reasons, ground 8 is dismissed.

**Ground 9 - Mitigation Factors**

In ground 9, Petitioner claims that his attorneys were ineffective in failing to seek out and

raise mitigation factors at sentencing.  Petitioner contends that he would have received a lower

sentence had the Court been made aware that he was a member of the Myrtle Beach Rescue Squad, assisted the local Helping Hand shelter, volunteered at Street Reach, the local homeless shelter, and provided volunteer service for U.S. Army MARS, using his own funds to provide communications for deployed U.S. military personnel, volunteered with the local Red Cross, and provided communications installation for local hurricane shelters.

Petitioner, however, cannot show either deficient performance or prejudice by his attorneys' alleged failure to raise these issues because Petitioner received a sentence within the sentencing range that he knowingly and voluntarily agreed to in his Rule 11(c)(1)(C) plea agreement. The 327-month sentence Petitioner received was significantly lower than his advisory guideline range of 360 months to Life or the statutory maximum. Petitioner's attorneys provided competent representation with respect to Petitioner's sentencing as evidenced by the fact that, through their sentencing memorandum and advocacy at sentencing, they convinced the Court to accept a stipulated sentence below Petitioner's advisory guidelines range.

Ground 9 is dismissed.

**Ground 11 - Hannibal Lechter**

Petitioner claims in ground 11 that his attorneys were ineffective in failing to move for a mistrial when the prosecutor referred to Petitioner as Hannibal Lechter during the sentencing hearing. This claim is completely without merit. There is no mechanism to move for a "mistrial" during a sentencing hearing. Petitioner's attorneys objected to the comment and the Court indicated that it would not consider the comment. [Sentencing hearing tr., ECF No 284 at 24]. Petitioner has not shown deficient performance or resulting prejudice with respect to ground 11, which is dismissed.

**Ground 12 - Shackles**

In ground 12, Petitioner claims ineffective assistance of counsel because his attorneys did not object to him appearing in court in shackles. This claim is also without merit. Petitioner was not brought before any jury and there is nothing in the record to suggest that Petitioner's appearance in shackles influenced the proceedings in any way. Petitioner has failed to show deficient performance or resulting prejudice as to ground 12, which is dismissed.

**Grounds 13 and 28 - Sentence**

Grounds 13 and 28 relate to Petitioner's sentence and the length of his incarceration.

In ground 13, Petitioner alleges his attorneys rendered ineffective assistance of counsel when they advised him that he would receive a sentence of no more than 20 years and that because of his age, health issues, and other mitigating factors, his likely sentence would be approximately 15 years. Petitioner contends his attorneys provided incorrect advice regarding the length of his sentence, which coerced him into accepting a plea. Petitioner also alleges his attorneys were completely unprepared to defend him against an overly long sentence.

A review of the plea colloquy indicates that Petitioner knowingly and voluntarily pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement and agreed to a stipulated sentence of 262 to 327 months imprisonment. Petitioner was advised of the statutory maximum sentence for each count as well as the possibility of consecutive sentences. [Plea hearing tr., ECF No. 159 at 69, 71-73]. The terms of the plea agreement were summarized for the record and Petitioner indicated that he entered into the plea agreement freely and voluntarily. *Id*. at 78. Petitioner was specifically questioned regarding the stipulated sentence set forth in the plea agreement:

> The Court:     And also with regard to the 11(c)(1)(C) stipulated sentence set forth at paragraph 11 of your plea agreement, it indicates that you're agreeing to a sentence of from 262 to 327 months actual incarceration followed by an appropriate statutory term of supervised release.
>
> You've fully discussed that with your attorneys; is that correct?
>
> Petitioner:     Yes, sir.
>
> The Court:     You've agreed to that freely and voluntarily; is that correct?
>
> Petitioner:     Yes, sir.

*Id*. at 79.

The plea colloquy establishes that Petitioner's 327 month sentence should have come as no surprise to him. Petitioner knowingly and voluntarily stipulated to a 262 to 327 month sentencing range, which was substantially below his advisory guideline range and the statutory maximum. Petitioner's claim that his attorneys coerced him into pleading guilty by promising a lower sentence is palpably incredible and Petitioner has failed to demonstrate sufficient extraordinary circumstances to overcome his sworn statements at the guilty plea hearing.

Similarly, Petitioner's claim that his attorneys were completely unprepared to defend him against an overly long sentence is frivolous. The conduct Petitioner admitted to during his guilty plea hearing warranted an advisory guideline range of 360 months to Life and provided for a statutory maximum sentence of 840 months or 70 years. Both Mr. Brittain and Mr. Simmons rendered competent and effective representation as evidenced by the fact that they secured a plea agreement for a sentencing range below Petitioner's advisory guideline range and applicable statutory maximum.

With respect to ground 13, Petitioner has failed to show constitutionally deficient performance from counsel or resulting prejudice. Ground 13 is, therefore, dismissed.

In ground 28, Petitioner argues that his continued incarceration constructively denies him of access to a life-saving bone marrow transplant and, as a result, his sentence violates the Eighth Amendment's ban on cruel and unusual punishment. To the extent Petitioner attempts to challenge his sentence on Eighth Amendment grounds, Petitioner waived the right to collaterally attack his sentence in his plea agreement. See [Plea agreement, ECF No. 126 at 11-12; Plea hearing tr., ECF No. 159 at 80]. Petitioner's appeal/post-conviction waiver was upheld by the Fourth Circuit Court of Appeals. [Fourth Circuit Opinion, ECF No. 289]. Ground 28 is dismissed.

## Ground 19 - Lack of Legal Library

Petitioner alleges governmental misconduct in ground 19 contending the government violated his civil rights when it housed him in the Dillon County Detention Center with no legal library. Petitioner also claims that the lack of a legal library caused him to agree to a plea agreement that contained various illegal clauses. This claim is without merit.

As stated by the government, there is no right to a law library. The right set forth in *Bounds v. Smith*, 430 U.S 817 (1977), merely recognized a constitutional right of access to the courts. Petitioner was not denied access to the courts while he was incarcerated at the Dillon County Detention Center. Petitioner had competent and effective legal representation during that period and has failed to demonstrate that his right of access to the courts was violated.

Additionally, Petitioner waived the right to collaterally attack his conviction or sentence in his plea agreement.

Ground 19 is dismissed.

### Ground 29 - Interstate Commerce

In ground 29, which relates to count four of the indictment, Petitioner claims his attorneys were ineffective in failing to challenge the government's assertion that the images of child pornography found on Petitioner's computer traveled across state lines.

Petitioner knowingly and voluntarily admitted to the elements of possession of child pornography at his guilty plea hearing including the element that the items of child pornography had been transported, shipped, or mailed in interstate or foreign commerce. [Plea hearing tr., ECF No. 159 at 65]. Petitioner further admitted in his filings [ECF No. 351] that he possessed at least 40,000 images of child pornography. Petitioner has not shown any credible dispute that some of those 40,000 images were transported in interstate or foreign commerce.

Petitioner has failed to show deficient performance or resulting prejudice related to the interstate commerce element on Petitioner's possession of child pornography charge. Ground 29 is dismissed.

### Summary

The Court has reviewed the complete record including each of Petitioner's grounds 1 through 31 and all of the arguments made with respect to each ground. None of Petitioner's claims or allegations, however, have any merit. Petitioner has failed to demonstrate a sufficient basis to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In particular, Petitioner has failed to show ineffective assistance of counsel under *Strickland*. To the extent any of Petitioner's claims do not rely on ineffective assistance of counsel, those claims are either procedurally defaulted, waived pursuant to the plea agreement, or both.

## Certificate of Appealability

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). When the district court denies relief on procedural grounds, the prisoner must demonstrate *both* that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484-85. In the instant matter, the Court concludes that Petitioner fails to make the requisite showing of "the denial of a constitutional right."

## Conclusion

For the reasons stated above, the government's [ECF No. 341] motion for summary judgment is **GRANTED** and Petitioner's [ECF Nos. 291 and 296] motion to vacate pursuant to 28 U.S.C. § 2255 is **DISMISSED with prejudice**. Petitioner's [ECF No. 347] motion for extension of time and [ECF No. 364] motion to proceed are **MOOT**.

**IT IS SO ORDERED**.

February 5, 2018                                           s/ R. Bryan Harwell
Florence, South Carolina                          R. Bryan Harwell
                                                                      United States District Judge